UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY M. HAMAN | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| v. | ) | |
| | ) | 4:14-cv-195 |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HEARTLAND BANK | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT
### (JURY DEMAND ENDORSED HEREIN)

Now comes Plaintiff, Kimberly M. Haman, by her attorneys, and for her *Complaint* against Defendants, Equifax Information Services, LLC and Heartland Bank, states as follows:

### INTRODUCTION

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens.  Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties.  Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should ultimately benefit from the resulting convenience and efficiency.

2.      Unfortunately, however, this information has also become readily available for, and subject to, mishandling and misuse.  Individual consumers can sustain substantial damage,

1

both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.  In fact, Defendant Equifax Information Services, LLC acknowledges this potential for misuse and resulting damage every time it solicits its credit monitoring service to a consumer.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information.  Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell to readily paying subscribers (*i.e.*, retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all
> sorts of computerized data banks, the individual is in great danger of having his
> life and character reduced to impersonal "blips" and key-punch holes in a stolid
> and unthinking machine which can literally ruin his reputation without cause, and
> make him unemployable or uninsurable, as well as deny him the opportunity to
> obtain a mortgage to buy a home. *We are not nearly as much concerned over the
> possible mistaken turn-down of a consumer for a luxury item as we are over the
> possible destruction of his good name without his knowledge and without reason.*
> *\* \* \* [A]s Shakespeare said, the loss of one's good name is beyond price and
> makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

8.      To further the primary goal of greater accuracy, the FCRA has also required CRAs, as well as "furnishers" of credit information to the CRAs, to conduct "reasonable investigations" into bona fide disputes sent to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit files, to correct or update any such errors or omissions, and to report back to the consumer the results of the investigation.

9.      This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff, Kimberly M. Haman ("Ms. Haman" or "Plaintiff"), against Equifax Information Services, LLC and Heartland Bank, for their willful and/or negligent violations of the Fair Credit Reporting Act, as described herein.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1681*p*. Venue in this judicial district is proper because Plaintiff resides in this judicial district and many of the facts relevant to this *Complaint* occurred in this judicial district.

## PARTIES

11.      Plaintiff, Kimberly M. Haman ("Plaintiff" or "Ms. Haman"), is an adult individual presently residing in Saint Louis, Missouri. Plaintiff is a "consumer" as defined in Section 1681*a*(c) of the FCRA.

3

12.     Defendant, Equifax Information Services, LLC ("Equifax"), is a Georgia limited liability company doing business throughout the country and in the State of Missouri.  Equifax is a "consumer reporting agency" as defined in Section 1681$a$(f) the FCRA.  Equifax is one of the largest CRAs in the world.

13.     Defendant, Heartland Bank ("Heartland"), is an independently owned, community bank headquartered in St. Louis, Missouri, doing business primarily in the State of Missouri. Heartland is a "furnisher" of consumer credit information as that term is used in Section 1681$s$-2 of the FCRA.

### FACTUAL ALLEGATIONS

14.     Plaintiff takes great pride in her good name and established credit rating, so she works hard to ensure that her bills are paid in-full and on-time every month.  As such, Plaintiff believes and understands that her credit record with all of her creditors is excellent.

15.     On February 5, 2013, accompanied by her mother, Ms. Haman visited a local Heartland branch to be added to her parents' joint checking account as an authorized user.

16.     Heartland required Ms. Haman to submit to a credit application in order to be added as an authorized user on the account.

17.     Although Ms. Haman initially resisted because she was in the process of refinancing her mortgage, she ultimately decided to sign the credit application upon being assured by Heartland that the credit check was routine and would not affect her credit score.

18.     Ms. Haman was approved and was added to her parents' checking account.

19.     On or around March 29, 2013, Ms. Haman was contacted by Credit Plus, Inc., a reseller of credit information to Ms. Haman's prospective mortgage lender, and was told that her

refinance was on hold because her credit score had dropped, as Heartland appeared to be reporting Ms. Haman as "deceased" on her Equifax credit report.

20.     Plaintiff was shocked, confused and upset, especially given that Heartland had promised that Ms. Haman's transaction with them would not affect her creditworthiness, and because her prospective mortgage lender refused to move forward with the refinance even though they knew the new information appearing on her credit report was obviously false.

21.     Plaintiff believed that such a ridiculous error could and would be remedied easily.

22.     Plaintiff immediately called Heartland to request they clear up any errors they had made in their reporting to Equifax.

23.     On April 2, 2013, Ms. Haman received a letter from Heartland ensuring her that she was not listed as "deceased" in any of Heartland's files, and that they would resubmit an update to the credit bureaus.  *See* Letter from Karen Attwood to Kimberly Haman, dated April 2, 2013 (a copy of which is attached hereto as Exhibit 1).

24.     After waiting a couple months to further ensure that any false information previously reported by Heartland had been removed or updated accordingly by Heartland and Equifax, Ms. Haman was confident that this hurdle was behind her.

25.     On or around June 30, 2013, Ms. Haman's prospective mortgage lender again requested her credit information from Equifax, and soon thereafter, Ms. Haman was notified that she was being denied financing because she was still being reported as "deceased" by Heartland. *See* Letter from Kevin Puntney from PrimeSource Mortgage to Kimberly Haman, dated June 30, 2013 (a copy of which is attached hereto as Exhibit 2).

26.     Ms. Haman experienced tremendous stress and anxiety as a result of being denied refinancing because of the false reporting, but was determined to set the record straight.

27.     After several unsuccessful calls to Heartland, on July 2, 2013, Ms. Haman contacted Equifax by phone to dispute any references to her being "deceased" that were appearing on her credit report.  Equifax assured Plaintiff that it would correct the problem.

28.     Plaintiff trusted and believed that Equifax would properly handle and quickly fix what seemed to be an easy matter to correct, and that her credit report would be updated accordingly by simply deleting any reference to her being "deceased" in the Heartland trade line.

29.     Equifax sent Ms. Haman its investigation results as to the Heartland trade line, and although the account was verified as belonging to Ms. Haman, there was no reference to "deceased" appearing anywhere in her credit file.  *See* Reinvestigation Results from Equifax to Kimberly Haman, dated July 10, 2013 (a copy of which is attached hereto as Exhibit 3).

30.     Ms. Haman believed Equifax and Heartland had finally resolved the issue.

31.     Believing that the issue was finally behind her, Ms. Haman applied for a Capital One credit card.  She was completely shocked and devastated to find out that she was denied due to Equifax and Heartland continuing to report her as "deceased."  *See* Letter from Capital One to Kimberly Haman, dated August 11, 2013 (a copy of which is attached hereto as Exhibit 4).

32.     Plaintiff was at a loss at how this could possibly be happening to her, given that both Equifax and Heartland knew that such information was obviously wrong, and that it would seem to be very easy to correct such a blatant error.

33.     Plaintiff began to think that Equifax and Heartland were not conducting any investigations into her disputes at all, nor cared whether or not they were reporting and disseminating false and highly damaging information about her.

34.     Equifax clearly understands how harmful an erroneous label of "deceased" appearing on a credit report can be for a consumer looking to be approved for a credit account.

6

35.     As of today, Ms. Haman's Equifax credit report continues to paint this false and damaging picture of Plaintiff.  *See* Equifax Credit Report, dated August 15, 2013 (a copy of which is attached hereto as Exhibit 5), at page 9 of 18 (stating "Whose Account – Deceased" and "ADDITIONAL INFORMATION – Consumer Deceased" in the comment section of the Heartland trade line).

36.     At this point, Plaintiff is at a complete loss as to what else she can do.

37.     Plaintiff is left to question how and why *she* is supposed to prove that the Heartland entry is incorrect as reported, and why Heartland and Equifax are allowed to get away with skirting their obligations under federal law to report only accurate information about her.

38.     The entire experience has imposed upon Plaintiff significant distrust, frustration and distress, and has rendered Plaintiff hopeless as to her ability to regain her good name and the credit rating that she deserves and has worked hard to earn.

39.     Ultimately, Plaintiff has desired to take advantage of credit opportunities, most notably, the refinance of her mortgage loan, but has been unable to do so because of Heartland and Equifax's failure to report only accurate information about Plaintiff.

40.     As a result, Plaintiff has been forced to continue paying higher monthly amounts on her mortgage than she would otherwise have to upon her approval for refinancing.

41.     In light of what has transpired, Ms. Haman has justifiably avoided applying for additional credit until the inaccurate information is ultimately corrected on her credit report.

42.     As of today, Plaintiff remains unable to obtain mortgage refinancing because of the inaccurate credit data being reported by Heartland and Equifax.

43.    Absent litigation, Plaintiff believes she will forever be harmed by the lack of procedures Heartland and Equifax have in place to assure the maximum possible accuracy of Plaintiff's credit report.

## COUNT ONE
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681*e*(b), 15 U.S.C. § 1681*i*(a)(1) and 15 U.S.C. § 1681*s*-2(b)(1)

44.    Plaintiff hereby incorporates by reference all well-pleaded allegations contained in the preceding paragraphs as if fully rewritten herein.

45.    A "consumer reporting agency" is defined by the FCRA as follows:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.  15 U.S.C. § 1681*a*(f).

46.    Equifax is a "consumer reporting agency" as defined by the FCRA.

47.    Heartland is a "furnisher" as that term is used in Section 1681*s*-2 of the FCRA.

48.    Section 1681*n* of the FCRA imposes civil liability on any CRA or furnisher "who willfully fails to comply with any requirement" of the Act.  *See* 15 U.S.C. § 1681*n*(a).

49.    Section 1681*o* of the FCRA provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act.

### Equifax's Failure To Adopt and/or Follow Reasonable Procedures

50.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681*e*(b).

51.    On numerous occasions, Equifax has prepared a patently false consumer report concerning Plaintiff.

52.     Despite actual and implied knowledge that Plaintiff is not dead, Equifax readily sold such false reports to one or more third party, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

53.     On each such instance, Equifax willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681*e*(b).

54.     Through Plaintiff's communications with Equifax, Equifax knows, or has sufficient reason to know, that when it prepares and sells a consumer report about Plaintiff, the information it is circulating is extremely inaccurate and damaging to Plaintiff.  Nevertheless, Equifax has taken no measures to stop painting a false and damaging picture about Plaintiff.

55.     Plaintiff remains unable to obtain mortgage refinancing because of the grossly inaccurate credit file maintained by Equifax.

56.     Plaintiff has suffered out-of-pocket loss as a result of Equifax's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service.

57.     Plaintiff is not currently free to take advantage of various credit opportunities available to other consumers because of Equifax's failure to report only accurate information about her.

58.     As a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration

and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

59.     Upon information and belief, Equifax has been sued on multiple occasions over the past ten (10) years for falsely reporting that an individual was "deceased," despite being on notice that such individual was alive.

60.     Upon information and belief, Equifax has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

61.     Equifax's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681*n*(a)(2).

**Equifax's Failure To Conduct Reasonable Reinvestigations**

62.     The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681*i*(a)(1).  The Act imposes a 30-day time limitation for the completion of such an investigation.  *Id.*

63.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681*i*(a)(5)(A).

64.     On multiple occasions in 2013, Ms. Haman has initiated disputes with Equifax

10

requesting that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading and highly damaging to her, namely, references to her being "deceased" within the Heartland trade line.

65.     Plaintiff specifically advised Equifax on numerous occasions that a mistake had been made, provided all necessary information to Equifax to support same, and requested the trade line be corrected accordingly, *i.e.*, any references to "deceased" be deleted.

66.     Either Equifax conducted ***no*** investigation of Ms. Haman's disputes, or such "investigations" were so shoddy as to allow objectively false and highly damaging information to remain in Ms. Haman's credit file.

67.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1) with respect to each dispute lodged by Plaintiff.

68.     As a direct and proximate result of Equifax's repeated disregard for each of Plaintiff's disputes as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

69.     As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

70.     Upon information and belief, Equifax has been sued on multiple occasions over

the past ten (10) years for refusing to correct its patently false reporting of an individual as "deceased," despite being on notice that such individual was alive.

71.     Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

72.     Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681*n*.

### Heartland Bank's Failure To Conduct Reasonable Reinvestigations

73.     Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information reported about them, *to wit*:

After receiving notice pursuant to section 611(a)(2) [§ 1681*i*] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681*i*];

(C) report the results of the investigation to the consumer reporting agency;
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for

purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –

    (i)      modify that item of information;
    (ii)    delete that item of information; or
    (iii)   permanently block the reporting of that item of information.

*See* 15 U.S.C. § 1681*s*-2(b)(1).

74.     On or around July 2, 2013, Plaintiff contacted Equifax to dispute the accuracy of the information being reported about her.

75.     Upon information and belief, pursuant to 15 U.S.C. § 1681*i*(a)(2), Heartland received notification of this dispute from Equifax.

76.     By the time Heartland received this credit bureau dispute, Heartland had already been contacted on numerous occasions by Plaintiff, advising Heartland that its trade line on her Equifax credit report was reflecting that she was "deceased" and that it was causing her problems with being approved for credit.

77.     Heartland failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line, in violation of Section 1681*s*-2(b)(1).

78.     Notwithstanding Heartland's actual knowledge that Plaintiff was not in fact dead, Heartland's failure to conduct a reasonable investigation of the accuracy of its reporting of this adverse information shows a reckless disregard for Plaintiff's rights under the FCRA.

79.     In addition to the violation as described above, Heartland failed to satisfy its duty under Section 1681*s*-2(b) of updating incomplete or inaccurate information it had previously reported to CRAs upon receipt of each notice from Equifax that Plaintiff disputed the accuracy of the previously reported information.

80.     Heartland's failure to report that Plaintiff disputed the accuracy of the trade line was a failure to accurately update the information because it was "misleading in such a way and

to such an extent that it [could] be expected to have an adverse effect" on Plaintiff.  *Gorman v. Wolpoff & Abramson, LLP, et al.*, 584 F.3d 1147 (9th Cir. 2009); *See also Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

81.    As a direct and proximate result of Heartland's willful and/or negligent refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage including, but not limited to: economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

82.    Heartland's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Heartland, pursuant to 15 U.S.C. § 1681*n*(a)(2).

**WHEREFORE**, Plaintiff, Kimberly M. Haman, respectfully prays this Court for the following relief:

A)    Actual damages in an amount to be proved at trial;

B)    Punitive damages as provided for by 15 U.S.C. § 1681*n*(2);

C)    Statutory damages as provided for by 15 U.S.C. § 1681*n*(2);

D)    Costs and attorneys' fees as provided for by 15 U.S.C. § 1681*n*(3) and 15 U.S.C. § 1681*o*(2); and

E)    Such other and further relief as this Court deems just and proper.

14

Dated this ____ day of February, 2014.     Respectfully submitted,

                                     */s/ Robert T. Healey*
                                      Robert T. Healey, Esq.
                                      **HEALEY LAW, LLC**
                                      640 Cepi Drive, Suite A
                                      Chesterfield, MO 63005
                                      Telephone: (636) 536-5175
                                      Facsimile: (636) 590-2882
                                      Email: bob@healeylawllc.com

                                      Sylvia A. Goldsmith (Ohio # 0064871)
                                      Geoff B. McCarrell (Ohio # 0086427)
                                      **GOLDSMITH & ASSOCIATES, LLC**
                                      Park West Building
                                      20545 Center Ridge Road, Suite 120
                                      Rocky River, OH 44116
                                      Telephone: (440) 934-3025
                                      Facsimile: (440) 934-3026
                                      Email: sgoldsmith@sgoldsmithlawoffice.com
                                      Email: gmccarrell@sgoldsmithlawoffice.com

                                      *Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit.

Dated this _____ day of February, 2014.

                                     */s/ Robert T. Healey*
                                      Robert T. Healey, Esq.
                                      **HEALEY LAW, LLC**